1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

* * *

7

LISSETTE NAPOLEONI,

Case No. 2:25-cv-00125-RFB-DJA

8

Plaintiff,

**ORDER**

9

v.

10

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE, ON BEHALF

11

OF THE HOLDERS OF THE IMPAC
SECURED ASSETS CORP. MORTGAGE

12

PASS-THROUGH CERTIFICATES SERIES
2007-1.,

13
14

Defendant.

15
16

Before the Court for consideration is Defendant's (ECF No. 7) Motion to Dismiss and

17

(ECF No. 10) Motion to Expunge *Lis Pendens*. For the foregoing reasons, the Court grants both

18

Motions and denies all other pending Motions as moot.

19
20

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

21

The following factual and procedural background includes factual allegations asserted in

22

Plaintiff's complaints in the three actions now consolidated in the instant matter, as well as

23

judicially noticed matters of public record.

24

**A.  The Underlying Note and Deed of Trust**

25

Plaintiff purchased real property located at 1465 Pawnee Drive, Las Vegas, Nevada (the

26

"Property") on April 22, 2005.[1] Plaintiff financed the purchase as evidenced by two deeds of trust,

27
28

---

[1] The Court takes judicial notice of the property records of the subject Property
authenticated by the Clark County Recorder as matters of public record. Lee v. City of Los

1    recorded on April 22, 2005. In December 2006, Plaintiff refinanced her loans and signed an

2    adjustable-rate promissory note ("Note") and Deed of Trust ("DOT") with IMPAC Funding

3    Corporation dba IMPAC Lending Group ("IMPAC") designated as the lender, securing a loan of

4    $265,500.00 (the "Loan"). The Note was not endorsed.[2]

5    　　　　According to an "Affidavit of Lost Note" executed by a representative of Bank of America,

6    National Association ("BANA"), attached to Deutsche Bank's Motion for Relief from Automatic

7    Stay in Plaintiff's Chapter 13 Bankruptcy proceeding, BANA acquired possession of the Note on

8    or before December 27, 2006, as the servicer of the Note.[3]

9    　　　　On August 31, 2009, a Notice of Default and Election to Sell under the DOT was recorded

10   by Mortgage Electronic Registration Systems, Inc. ("MERS"), as the successor beneficiary of the

11   DOT. The Notice listed BAC Home Loans Servicing, LP ("BAC"), a subsidiary of BANA, as the

12   point of contact for curing default, loan modification, and mediation. On February 24, 2010, a

13   Nevada Notice of Trustee's Sale was recorded, with a nonjudicial foreclosure sale scheduled for

14   March 15, 2010.

15   　　　　On August 11, 2010, an "Assignment of Deed of Trust" was recorded. The Assignment

16   indicated that on July 30, 2010, MERS as successor beneficiary under the DOT, and nominee for

17   IMPAC, endorsed the Note and assigned all rights and interest under the DOT and Note to

18   Defendant Deutsche Bank National Trust Company, as Trustee, on Behalf of The Holders of The

19   IMPAC Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1 ("Deutsche

20   Bank" or Defendant).

21   　　　　On August 16, 2011, a "Corporation Assignment of Deed of Trust" was recorded. That

22   document stated the DOT, together with the Note, was assigned by MERS to Deutsche Bank on

23   August 10, 2011.

24   　　　　///

25   Angeles, 250 F.3d 668, 689 (9th Cir. 2001) ("[U]under Fed. R. Evid. 201, a court may take judicial

26   notice of 'matters of public record.'") (citing Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)).

27   　　　　[2] Deutsche Bank attached a copy of the original Note, which was unendorsed. See ECF No 8-2. Plaintiff's Complaint also alleges the Note was not endorsed.

28   　　　　[3] See In Re: Lissette Napoleoni, Case No. BKS-10-13688-BAM at ECF No. 112-2.

### B. Plaintiff's Chapter 13 Bankruptcy

On March 8, 2010, Plaintiff filed for Chapter 13 bankruptcy. See In Re: Lissette Napoleoni, Case No. BKS-10-13688-BAM. On August 24, 2010, Deutsche Bank filed a Proof of Claim ("POC") for the Loan and arrearage, with BAC as the servicer. See id. at Claim No. 20-1. The POC included a copy of the DOT, and the July 30, 2010 "Assignment of Deed of Trust." Id. The POC did not attach a copy of the Note. Id.

On December 27, 2010, Plaintiff filed a motion to value the Property and "strip off" a lien held by a second position deed of trust holder. Id. at ECF No. 56. The Motion explicitly recognized Deutsche Bank's priority lien on the Property. Id. On February 24, 2011, the bankruptcy court ordered that the second position DOT lien would be stripped and avoided upon completion of the Chapter 13 plan and/or discharge. Id. at ECF No. 60.

On May 31, 2011, Plaintiff agreed to a loan modification with Deutsche Bank, through its servicer BAC, recapitalizing $19,637.17 in arrears and lowering the interest rate to 2-3% on the principal. Id. at ECF No. 66-2. The bankruptcy court approved the modification on June 30, 2011. Id. at ECF No. 74. Deutsche Bank, by and through BAC, filed an Amended POC on February 9, 2012, which recognized the loan modification. Id., Claim No. 20-2. Plaintiff did not object to the Amended POC.

On September 9, 2011, the bankruptcy court approved Plaintiff's # 4 Chapter 13 Plan, which confirmed the loan modification agreement and listed the creditor as Bank of America Home Loans. Id. at ECF Nos. 85, 87.

On February 29, 2012, Reconstruct Company, N.A., listed as "Trustee for the Beneficiary," recorded a "Rescission of Election to Declare Default."

After Plaintiff defaulted on payments under the modified loan, Plaintiff filed her Modified # 5 Chapter 13 Plan on July 1, 2014. Id. at ECF No. 87. The # 5 Plan provided Plaintiff would surrender the Property in full satisfaction of the claim of Bank of America Home Loans "not later than 10 days after confirmation of this plan." Id. The Number # 5 Plan was confirmed on December 29, 2014. Id. at ECF No. 109.

On June 23, 2015, Deutsche Bank, with BANA as loan servicer, filed a Motion for Relief

from Automatic Stay based on Plaintiff's default on her loan payments due as of February 1, 2014, and failure to surrender the property pursuant to the # 5 Plan. Id. at 112. The Motion sought relief from the stay so Deutsche Bank could proceed with nonjudicial foreclosure. The Motion attached a Lost Note Affidavit dated September 12, 2012, by the Assistant Vice President of BANA. It stated that the original Note executed by Plaintiff on December 12, 2006 was acquired by BANA on or before December 27, 2006, and that "BANA's lost note procedures were followed in determining that the Note had been lost." Id. at 112-2. Plaintiff did not oppose the Motion. Based on Plaintiff's non-opposition, the bankruptcy court granted Deutsche Bank relief from the automatic stay on August 7, 2015. Id. at ECF No. 116. On October 1, 2015, the bankruptcy court granted Plaintiff a discharge based on her completion of the Chapter 13 Plan. Id. at ECF No. 120.

### C. Post-Bankruptcy, Pre-State Court Action

In 2016, Plaintiff alleges Deutsche Bank sent her a letter claiming to be the Note holder. She states that until that point, she believed IMPAC was still the lender and BANA was the servicer, because the information on her billings did not change. Plaintiff alleges she demanded evidence of Deutsche Bank's interest in the Property and a copy of the original Note, but Deutsche Bank failed to provide it.

On October 27, 2016, Deutsche Bank, as current beneficiary for the DOT, recorded a substitution of the original trustee, Ron Morrison, with MTC Financial Inc. dba Trustee Corps ("MTC") as the new trustee for the DOT.

### D. Deutsche Bank's 2019 State Court Action

On October 15, 2019, Deutsche Bank filed a complaint for declaratory relief against Plaintiff in Nevada state court, Case No. A-19-803643-C (the "State Court Action"), seeking a declaration of its right to enforce the Note pursuant to N.R.S. 104.3309, and that all the rights and interests under the Note were transferred to it.[4] The complaint alleged that on August 10, 2011, the Deed of Trust and Note were transferred from IMPAC to Deutsche Bank, and the assignment was recorded on August 16, 2011. ECF No. 9-17. It further alleged it directly acquired ownership

---

[4] The Court takes judicial notice of the docket and filings in the underlying State Court Action as a matter of public record. See Rey'n Pasta Bella, LLC, 4422 F.3d at 746 n.6.

of the Note from BANA. Id.  The complaint attached a "Lost Note Affidavit" executed on March 16, 2017, by the Vice President of Select Portfolio Servicing, Inc. ("SPS"), Deutsche Bank's then loan servicer. ECF No. 17-3. The affidavit stated, "upon information and belief, [Deutsche Bank] was the owner of the Note when the loss of possession occurred and was entitled to enforce the Note at that time." Id.

On October 31, 2019, Plaintiff filed her answer in the State Court Action, *pro se*. ECF No. 9-18. Her answer pointed out the lack of information as to how BANA acquired the Note and how Deutsche Bank acquired the Note from BANA and asked the state court to ensure that she was protected pursuant to N.R.S. 104.3309. Plaintiff's answer did not reference any statute of limitations for Deutsche Bank to bring the State Court Action.

On April 24, 2021, Plaintiff filed a motion to amend her responsive pleading, seeking to raise the affirmative defenses of laches and estoppel. ECF No 25-4.  In an April 27, 2021 hearing, the state court granted summary judgment to Deutsche Bank and denied Plaintiff's pending motion to amend her answer as moot. ECF No. 25-5.

On April 14, 2022, the state court entered findings of fact, conclusions of law, and judgment in favor of Deutsche Bank. ECF No. 11-3. The state court found (1) Deutsche Bank became the successor-in-interest to the Note and Deed of Trust using Bank of America Loan Servicing, LP as its servicing agent, (2) Deutsche Bank could not locate the original Note as required to commence non-judicial foreclosure proceedings, and it contacted the previous servicer "but the original copy of the Note is nowhere to be found," (3) Deutsche Bank was entitled to enforce the Note when loss of possession occurred, and Deutsche Bank satisfied the other requirements of NRS 104.3309, and is thus entitled to enforce the Note. ECF No. 8-3.

On February 26, 2024, the Nevada court of appeals affirmed the state court's judgment. See Napoleoni v. Deutsche Bank Nat'l Tr. Co. as Tr. of Holders of Impac Secured Assets Corp. Mortgage Pass-Through Certificates Series 2007-1 ("Deutsche Bank"), 544 P.3d 258 (Nev. App. 2024) (Table). Plaintiff filed a *writ of certiorari* to the United State Supreme Court, which was denied. See Napoleoni v. Deutsche Bank, 145 S. Ct. 331 (2024), reh'g denied sub nom. Napoleoni v. Deutsche Bank, 145 S. Ct. 998 (2024).

**E.  September 2024 Commencement of Non-Judicial Foreclosure Proceedings**

On September 9, 2024, MTC as successor trustee, recorded a Notice of Breach and Default and of Election to Cause Sale of the Property ("Notice of Default") under the DOT, which stated that Plaintiff defaulted on payments that became due on February 1, 2014.

**F.  This Action**

On December 20, 2024, Plaintiff, proceeding *pro se* filed the instant action in Nevada state court, asserting a single cause of action for quiet title, seeking a declaration that she is the rightful owner of the subject property, and that title is free from any encumbrances, liens, or other claims asserted by Deutsche Bank. Plaintiff concurrently filed a separate action, now consolidated (the "Consolidated Complaint"). See Case No. 2:25-cv-00127-JAD-MDC at ECF 1-2. The Consolidated Complaint asserted causes of action for (i) wrongful foreclosure; (ii) "violation of the one-action rule;" (iii) "statute of limitations;" and (iv) quiet title.

On December 31, 2024, Plaintiff recorded a "Notice of *Lis Pendens*" against the Property. ECF No. 9-21.

On January 21, 2025, Deutsche Bank filed a Petition for Removal based on diversity jurisdiction. ECF No. 1.

On January 22, 2025, Deutsche Bank filed a Notice of Related Case No. 2-25-cv-00127 pursuant to Local Rule 42.1. ECF No. 4. On March 3, 2025, Deutsche Bank filed a Motion to Consolidate Case No. 2-25-cv-00127-JAD-MDC with this action. ECF No. 23. On March 5, 2025, the Court granted the Motion and consolidated the cases for all purposes. ECF No. 26.

On January 28, 2025, Deutsche Bank filed the instant Motion to Dismiss. ECF No. 7-9. As of February 18, 2025, the Motion to Dismiss was fully briefed. ECF Nos. 16-17.

Deutsche Bank concurrently filed the instant Motion to Expunge *Lis Pendens* on January 28, 2025. ECF No. 10. On February 18, 2025, Deutsche Bank filed a Notice of Plaintiff's Non-Opposition to the Motion to Expunge *Lis Pendens*. ECF No. 18. On February 21, 2025, Plaintiff filed an "Errata Motion" seeking to supplement her Opposition to Deutsche Bank's Motion to Dismiss, which Defendant opposed. ECF Nos. 21, 25.

On February 24, 2025, Deutsche Bank filed a Motion to Stay Discovery. ECF No. 23. It

was fully briefed. ECF Nos. 27, 31. On April 23, 2025, the Court granted the Motion to Stay Discovery pending the outcome of the instant Motion to Dismiss. ECF No. 45.

While the Motion to Dismiss was pending and the case was stayed, Plaintiff filed various procedurally improper Motions. On February 27, 2025, Plaintiff filed a "Motion for Damages." ECF No. 23. Deutsche Bank filed an Opposition. ECF No. 28. On March 31, 2025, Plaintiff filed a "Motion for Summary Judgment to Quiet Title" and "Motion for Summary Judgment on Wrongful Foreclosure." ECF Nos 35, 36. Deutsche Bank opposed both Motions. ECF No. 44. Plaintiff filed a reply. ECF No. 47. On April 7, 2025, Plaintiff filed a "Motion to Declare the 'Napoleoni Loophole' Unconstitutional" and "Motion to Recognize and Reject the 'Napoleoni Loophole.'" ECF Nos 37, 38. Deutsche Bank filed a Motion to Strike both "Napoleoni Loophole" Motions. ECF No. 42. The Motion to Strike was fully briefed. ECF Nos. 46, 48.

On June 18, 2025, Plaintiff filed yet another lawsuit against Deutsche Bank in the Eighth Judicial District Court, which Deutsche Bank removed on July 9, 2025. See Case No. 2:25-cv-01241-RFB-DJA, ECF No. 1-1. Plaintiff's third complaint constitutes hundreds of pages of allegations and 37 purported causes of action, all of which ultimately amount to challenges to Deutsche Bank's standing to foreclose, alleged errors in the State Court Action, and claims relating to Deutsche Bank's violation of the bankruptcy discharge injunction which appear to be raised for the first time. Id. On July 16, 2025, Defendant filed a Motion to Dismiss in that action, which was fully briefed. Id. at ECF Nos. 4, 17, 23. On July 18, 2025, Defendant filed a Motion to Consolidate, which Plaintiff opposed. Id. at ECF Nos. 9, 17. On August 1, 2025, the Court granted the Motion to Consolidate, and consolidated Plaintiff's third lawsuit with the instant matter. Id. at ECF No. 19; ECF No 58. On September 3, 2025, the Court stayed discovery in the consolidated action pending the Court's ruling on Defendants' Motion to Dismiss.

The Court's Order on Deutsche Bank's Motion to Dismiss and to Expunge *Lis Pendens* follows.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Further, in considering a defendant's motion to dismiss, a district court is required to interpret a *pro se* complaint liberally. Sause v. Bauer, 585 U.S. 957, 960 (2018).

### B.    Motion to Expunge *Lis Pendens*

A motion to expunge *lis pendens* is governed by state law. See Orange Cty. Airport Hotel Assocs. v. Hongkong & Shanghai Banking Corp., 52 F.3d 821, 827 (9th Cir. 1995). In Nevada, "*lis pendens* provides constructive notice to potential purchases or lenders that the real property . . . is the subject of a pending lawsuit." Tahican v. Eighth Judicial Dist. Court of Nev., 523 P.3d 550, 553 (Nev. 2023) (citing NRS 14.010(3)).

NRS 14.010(1) allows for a *lis pendens* to be filed when there is an action, "affecting the title or possession of real property . . ." NRS 14.015(2) requires that the party who recorded the notice of pendency of the action must establish five factors to the court's satisfaction: (1) the action is for the foreclosure of a mortgage upon the real property described in the notice or affects the

title or possession of the real property described in the notice, (2) the action was not brought in

bad faith or for an improper motive, (3) the recording party will be able to perform any conditions

precedent to the relief sought in the action insofar as it affects the title or possession of the real

property, (4) the recording party would be injured by any transfer of an interest in the property

before the action is concluded, and (5) the recording party has a likelihood of prevailing in the

action or a fair chance of success on the merits. See NRS 14.015(2)-(3). If a court finds that the

party who recorded the notice of pendency of the action has failed to establish any of the above

requirements, the court shall order the cancellation of the notice of pendency and order the party

who recorded the notice to record with the recorder of the county a copy of the order of

cancellation. NRS 14.010(1).

### III.    DISCUSSION

#### A.  Motion to Dismiss

##### i.  *Judicial Notice*

As a threshold matter, Deutsche Bank requests the Court take judicial notice of the exhibits

attached to its Motion to Dismiss which include documents relating to the subject Property

recorded with the Clark County, Nevada Recorder's Office, the docket and filings in Plaintiff's

2010 Chapter 13 bankruptcy, and the docket and filings in the 2019 State Court Action. **"**Generally,

district courts may not consider material outside the pleadings when assessing the sufficiency of a

complaint under Rule 12(b)(6)." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)).

Judicial notice is an exception to this doctrine. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d

988, 998 (9th Cir. 2018). "Judicial notice under Rule 201 permits a court to notice an adjudicative

fact if it is 'not subject to reasonable dispute.'" Fed. R. Evid. 201(b). "A fact is 'not subject to

reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Khoja, 899 F.3d at 999 (quoting Fed.

R. Evid. 201(b)(1)–(2)). Thus "[a] court may take judicial notice of matters of public record

without converting a motion to dismiss into a motion for summary judgment." Id. (quoting Lee,

250 F.3d at 689). "But a court cannot take judicial notice of disputed facts contained in such public

1    records." Id.

2        The Court grants Deutsche Bank's request, and as referenced above, takes judicial notice

3    of the court filings and property records as matters of public record, including any undisputed facts

4    therein. See Khoja, 899 F.3d at 999.

5        **ii.  *Quiet Title***

6        Plaintiff brings a claim for quiet title, seeking a declaration from this Court that Plaintiff

7    has title in the Property free from any encumbrances, liens, or other claims asserted by Deutsche

8    Bank. NRS 40.010 governs Nevada quiet title actions and provides: "[a]n action may be brought

9    by any person against another who claims an estate or interest in real property, adverse to the

10   person bringing the action, for the purpose of determining such adverse claim." A court has

11   inherent equitable power to quite title as between two parties who appear and litigate the issues.

12   Parks v. Quintana, 477 P.2d 869, 869 (Nev. 1970). A plea to quiet title does not require any

13   particular elements, but "each party must plead and prove his or her own claim to the property in

14   question." Chapman v. Deutsche Bank Nat'l Tr. Co., 302 P.3d 1103, 1106 (Nev. 2013).

15       Plaintiff seeks to quiet title in herself based on the alleged failure of Deutsche Bank to

16   establish its right to enforce the Note, secured by the Deed of Trust, which Plaintiff executed in

17   2006. This case "appears to be a leftover from the U.S. housing bubble in the early 2000s, where

18   bad business practices and sloppy recordkeeping frequently led to the loss of the original mortgage

19   note." In re Chavez, BAP NV-24-1184-BCL, 2025 WL 1541461, at *1 (B.A.P. 9th Cir. May 30,

20   2025). It is undisputed the original of copy of the Note was lost at some unknown time between

21   2006 and 2012. Deutsche Bank contends it has the right to enforce the Note under Nevada law

22   pursuant to NRS 104.3309. Plaintiff's Complaint essentially alleges that Deutsche Bank failed to

23   establish it satisfied the requirements under NRS 104.3309, however, as discussed below, that

24   assertion is barred by the doctrines of judicial estoppel and issue preclusion. Accordingly, the

25   Court dismisses Plaintiff's quiet title claim with prejudice.

26       1.  Judicial Estoppel

27       "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage

28   by asserting one position, and then later seeking an advantage by taking a clearly inconsistent

position." <u>Hamilton v. State Farm Fire & Cas. Co</u>., 270 F.3d 778, 782 (9th Cir. 2001). In the bankruptcy context, where a debtor asserts a position in bankruptcy proceedings, the reliance of the bankruptcy court on that position to the benefit of the debtor in, for example, confirming a Chapter 13 plan or discharging a debt, constitutes "judicial acceptance" such that an inconsistent position by the debtor in a later proceeding would create "the perception that either the first or the second court was misled." <u>Id.</u> at 782-83 (citing <u>New Hampshire v. Maine</u>, 532 U.S. 742 (2001)).

In her Chapter 13 bankruptcy, Plaintiff did not object to Deutsche Bank's Proof of Claim based on its failure to establish its right to enforce the Note—instead, Plaintiff acknowledged Deutsche Bank's superior lien on the Property, negotiated a modified loan with Deutsche Bank, and agreed to surrender the Property to Deutsche Bank to satisfy its claim in her # 5 Chapter 13 Plan. The bankruptcy court approved the # 5 Plan and Plaintiff obtained a discharge based on its completion. Plaintiff's assertion in this case, that Deutsche Bank never established it had the right to enforce the Note, is clearly inconsistent with Plaintiff's recognition of Deutsche Bank's priority lien, negotiation of a loan modification, and agreement to surrender the Property to Deutsche Bank in satisfaction of its claim. Moreover, Plaintiff did not oppose Deutsche Bank's 2015 motion for relief from the automatic stay in bankruptcy court, despite the deficiencies she now identifies in the Lost Note Affidavit executed by BANA, which Deutsche Bank attached to its motion in the bankruptcy court to support its right to foreclose. Plaintiff's failure to raise the issues regarding Deutsche Bank's standing to enforce the Note in her bankruptcy proceedings is clearly inconsistent with her allegations in this case.

Plaintiff's prior inconsistent positions were judicially accepted when her plan was confirmed, and she received a discharge. Her challenge to Deutsche Bank's right to enforce the Note in the instant action is thus barred by the doctrine of judicial estoppel. <u>See e.g.</u>, <u>Benetatos v. Hellenic Republic</u>, 371 F. App'x 770, 771 (9th Cir. 2010) (affirming the district court's application of judicial estoppel where the plaintiff's position was clearly inconsistent with his earlier position in bankruptcy, and "he achieved success in the prior proceeding by obtaining a plan confirmation and a bankruptcy discharge.").

///

2.  Issue Preclusion

When a prior action is litigated in state court and results in a state court judgment, federal courts must apply the prelusion law of the state in which the judgment is rendered. <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984); <u>Rodriguez v. City of San Jose</u>, 930 F.3d 1123, 1130 (9th Cir. 2019). The Court thus applies Nevada law in determining the preclusive effect of the state court judgment in favor of Deutsche Bank in the State Court Action for quiet title.

Under Nevada law, issue preclusion, also referred to as collateral estoppel, provides that if "an issue of fact or law was actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties." <u>LaForge v. State, Univ. & Cmty. Coll. Sys. of Nevada</u>, 997 P.2d 130, 133 (Nev. 2000). Nevada has a three-part test for issue preclusion: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation." <u>Id.</u> (citing <u>Executive Mgmt. v. Ticor Title Ins. Co.</u>, 963 P.2d 465, 473 (1998)).

The Court finds issue preclusion applies here. First, the issue of Deutsche Bank's right to enforce the Note is the crux of Plaintiff's claim for quiet title in this case, and that identical issue was central to the State Court Action for quiet title. Second, the state court's order granting summary judgment to Deutsche Bank was a final adjudication on the merits: the state court held that Deutsche Bank is entitled to enforce the Note pursuant to NRS 104.3309 after Plaintiff had a full opportunity to litigate that issue through discovery, summary judgment briefing, and a hearing. That ruling was final and was affirmed by the Nevada court of appeals. Lastly, Plaintiff, the party against whom the judgment is asserted, is the same party who litigated this issue in the State Court Action. Under the doctrine of issue preclusion, this Court makes no finding as to whether the state court's final judgment and the court of appeals affirmance was correct—since Plaintiff's challenge to Deutsche Bank's authority to enforce the Note has already been "actually and necessarily litigated," the issue *cannot be relitigated* in this, or any other case. <u>Executive Management</u>, 963 P.2d at 473 (quoting <u>University of Nevada v. Tarkanian</u>, 879 P.2d 1180, 1191 (Nev. 1994)).

1    Plaintiff's Complaint and Opposition asserts that the 2019 State Court Action was barred

2    under the four-year statute of limitations period prescribed under NRS 11.220. The Court liberally

3    construes this as an argument that the final judgment in the State Court Action was invalid because

4    it was barred by the statute of limitations, and thus it cannot have preclusive effect. However,

5    pursuant to Nevada Rule of Civil Procedure 8(c), the statute of limitations is an affirmative defense

6    that must be pled in a responsive pleading, or it is waived. Clark Cnty. Sch. Dist. v. Richardson

7    Const., Inc., 168 P.3d 87, 96 (Nev. 2007). Plaintiff did not plead the statute of limitations in the

8    State Court Action in her responsive pleading. She argues she attempted to raise affirmative

9    defenses such as laches and estoppel, which indirectly raised the issue of the statute of limitations,

10    and which the state court erroneously failed to consider. But those defenses were raised in an

11    untimely motion to amend her responsive pleading, which the state court denied. Given the policy

12    reason for preclusion doctrine—promoting finality—a ruling based on a failure to follow

13    procedural rules is "an adjudication upon the merits" even if "the substantive issues have not been

14    tried." Five Star Cap. Corp. v. Ruby, 194 P.3d 709, 715-16 (Nev. 2008).  Accordingly, although

15    the issue of whether the State Court Action was barred by the statute of limitations does not appear

16    to have been substantively addressed by the state court, the judgment nevertheless has issue

17    preclusive effect.

18    ### 3.  Claim Preclusion

19    Deutsche Bank also argues Plaintiff's quiet title claim is precluded under the doctrine of

20    claim preclusion. Claim preclusion prevents a party from bringing a claim where the grounds of

21    recovery were or could have been brought in a prior action. Five Star, 194 P.3d at 713. However,

22    Nevada recognizes a declaratory judgment exception to claim preclusion. See Boca Park

23    Marketplace Syndications Grp., LLC v. Higco, Inc., 407 P.3d 761 (Nev. 2017). "When a plaintiff

24    seeks solely declaratory relief . . . regardless of outcome, the plaintiff or defendant may pursue

25    further declaratory or coercive relief in a subsequent action." Id. at 925-26 (quoting Restatement

26    (Second) of Judgments § 33 cmt. c). While a declaratory judgment has *issue* preclusive effect as

27    to "any issues actually litigated by [the parties] and determined in the action," if that judgment did

28    not resolve a claim for damages, it will not preclude the parties from bringing a later claim arising

out of the same facts and circumstances. Id. at 926, n. 1.

The State Court Action was solely for declaratory relief—no damages were sought. Accordingly, Plaintiff is not barred from bringing the instant quiet title claim by the doctrine of claim preclusion, even though she could have brought it as a counterclaim against Deutsche Bank in the State Court Action.

### 4. The Rooker-Feldman Doctrine

Plaintiff's briefing contains various statements which amount to a request that this Court overturn the state court judgment and the Nevada court of appeals' affirmance.[5] The Rooker-Feldman doctrine prohibits federal courts from exercising appellate review of a state court's final judgment. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983). Federal courts lack subject matter jurisdiction over "cases brought by state court losers" challenging "state-court judgments rendered before the [federal] district court proceedings commenced." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Accordingly, Rooker-Feldman bars federal review of claims arising from a "state court's purportedly erroneous judgment," Black v. Haselton, 663 F. App'x 573, 575 (9th Cir. 2016), involving "attacks on state court proceedings [that] constitute a *de facto* appeal of the state court judgment," Exxon Mobil Corp., 544 U.S. at 284, or seeking "relief that would require the federal court to vacate the final state court judgment." Demos v. U.S. Dist. Ct., 925 F.2d 1160, 1161–62 (9th Cir. 1999). To apply Rooker-Feldman, a court must assess whether the allegations advanced in the federal complaint are "inextricably intertwined" with the state court's proceedings and adjudication. Feldman, 460 U.S. at 487.

To the extent Plaintiff claims she is injured by the state court's erroneous judgment and asks this Court to provide relief from that judgment, this Court lacks jurisdiction over her claims. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004) ("Rooker-Feldman thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and*

---

[5] For example, Plaintiff states the Court should "reconsider" the state court decision because the state court judge was not impartial and "undermined the legitimacy of the entire case" and asserts the Nevada appellate court failed to properly consider her arguments such that this Court should "revisit" its affirmance of the state court judgment. See ECF No. at pp. 5-8.

seeks as her remedy relief from the state court judgment.") (emphasis in original). Plaintiff's allegations seeking to quiet title against Deutsche Bank are inextricably intertwined with the proceedings and adjudication in the State Court Action. For example, Plaintiff's Complaint alleges the Note was not endorsed and is thus unenforceable as transferred to Deutsche Bank. But the Nevada court of appeals specifically held "even without the endorsement, the 2010 assignment would have effectively transferred the deed of trust, together with the note." Napoleoni, 544 P.3d 258, n. 3 (Nev. App. 2024) (internal quotations and citations omitted). Likewise, the court of appeals considered Plaintiff's contentions that the assignment to Deutsche Bank was defective, which Plaintiff reasserts here, and held "such purported defects would, at most, render the assignment voidable, and Napoleoni lacks standing to challenge a voidable assignment." Id. at *3.[6]

Only the Nevada Supreme Court or U.S. Supreme Court has jurisdiction to review the court of appeals' affirmance of the state court judgment. Accordingly, the Rooker-Feldman doctrine independently requires dismissal of Plaintiff's quiet title claim because granting Plaintiff her requested relief would require this Court to vacate the state court judgment.

### iii. *Wrongful Foreclosure*

Plaintiff also brings a claim for wrongful foreclosure against Deutsche Bank, which the Court liberally construes as challenging Deutsche Bank's commencement of nonjudicial foreclosure proceedings on the subject Property by recording a Notice of Default in September of 2024. As discussed above, Plaintiff is judicially and collaterally estopped from bringing a wrongful foreclosure claim based on an assertion that Deutsche Bank lacks authority to enforce the Note. However, Plaintiff is not barred from challenging a foreclosure by Deutsche Bank on other grounds that were not at issue in the bankruptcy or state court proceedings. Nevertheless, the Court finds Plaintiff fails to state a claim for wrongful foreclosure.

A wrongful foreclosure claim may either be alleging a tort of wrongful foreclosure or a violation of NRS Chapter 107, which provides procedural requirements for a deed of trust

---

[6] Plaintiff also pleads the court of appeals failed to address various arguments she raised on appeal, including laches and estoppel. But the court of appeals held "[i]nsofar as Napoleoni raises arguments that are not specifically addressed herein, we have reviewed them and conclude they do not warrant relief." Napoleoni, 544 P.3d at n. 6.

beneficiary to pursue a nonjudicial foreclosure. See Hines v. Nat'l Default Servicing Corp., 131 Nev. 1291 (2015) (unpublished). The Court addresses whether Plaintiff has adequately plead either type of wrongful foreclosure claim in turn.

### 1. Tort of Wrongful Foreclosure

To prevail on a wrongful foreclosure tort claim, a plaintiff must prove that the foreclosing party did not have a legal right to foreclose on the property. Collins v. Union Fed. Sav. & Loan Ass'n, 662 P.2d 610, 623 (Nev. 1983). "[T]he material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." Id. Here, Plaintiff's wrongful foreclosure tort claim fails because Plaintiff has not pled that she was not in default under the DOT at the time of a foreclosure sale by Deutsche Bank—in fact, it appears from the record Deutsche Bank has not yet foreclosed on the Property. See id.; see also Agio, LLC v. Quality Loan Serv. Corp., 136 472 P.3d 186 (Table) (Nev. 2020) (affirming dismissal of a tort claim for wrongful foreclosure where the plaintiff's complaint did not contain any allegations that the owners were not in default under [the defendant's] deed of trust). Because Plaintiff does not dispute that she is in default under the DOT, and Deutsche Bank has not yet exercised the power of sale, the Court dismisses Plaintiff's wrongful foreclosure claim without leave to amend, as amendment would be futile.

However, the Court dismisses the claim without prejudice as a wrongful foreclosure claim may still accrue if Deutsche Bank forecloses on the Property. See e.g., R.S. Coppola Tr. - Oct. 19, 1995 v. Nat'l Default Servs., 321CV00281MMDCSD, 2022 WL 2753512, at *7 (D. Nev. July 13, 2022), aff'd sub nom. Coppola v. Nat'l Default Servs., 22-16212, 2023 WL 6566493 (9th Cir. Oct. 10, 2023) (dismissing the plaintiff's wrongful foreclosure claim without leave to amend but without prejudice because "[p]erhaps [the defendant] will eventually succeed in foreclosing on the Property, perhaps [the plaintiffs] will not be in default on the Loan at that time, and perhaps something about the foreclosure will be wrongful.")

### 2. Violation of NRS Chapter 107

A wrongful foreclosure claim may also arise from a violation of NRS Chapter 107. See Hines, 131 Nev. at *2-3. When the grantor of a deed of trust defaults on the underlying loan, the

1   deed of trust beneficiary may pursue a nonjudicial foreclosure if NRS Chapter 107's requirements

2   are satisfied. Edelstein v. Bank of N.Y. Mellon, 286 P.3d 249, 254–55 (Nev. 2012). As an initial

3   matter, as discussed above, Plaintiff cannot bring a claim based on a purported violation of NRS

4   107.0804(b)(2), because Deutsche Bank is "entitled to enforce [the Note] pursuant to a court order

5   issued under NRS 104.3309." NRS 107.0805(b)(2)(III). Plaintiff also alleges Deutsche Bank has

6   violated various other provisions of Chapter 107. However, no nonjudicial foreclosure sale has

7   occurred, and the Court finds Plaintiff's Complaint does not plausibly allege facts sufficient to

8   state a claim for a violation of NRS Chapter 107 based solely on the recording of the September

9   Notice of Default.[7] Accordingly, Plaintiff's wrongful foreclosure claim based on any alleged

10  failure of Deutsche Bank to comply with Chapter 107's requirements is dismissed without leave

11  to amend, but without prejudice.

12              3.   Violation of NRS 40.430

13      Plaintiff also alleges Deutsche Bank's commencement of nonjudicial foreclosure

14  proceedings violated NRS 40.430, Nevada's "one-action rule," which provides "there may be but

15  one action for the recovery of any debt, or for the enforcement of any right secured by a mortgage

16  or other lien upon real estate." Plaintiff contends the one action rule prohibits Deutsche Bank from

17  proceeding with a nonjudicial foreclosure, because it already brought the State Court Action

18  against Plaintiff. The one action rule requires a lender who has a lien upon real estate to proceed

19  first against real property before suing the debtor to recover the debt owed and limits any

20  subsequent deficiency judgment against the debtor to the amount remaining after subtracting the

21  fair market value of the foreclosed real estate. Bank of Nevada v. Petersen, 380 P.3d 854, 857

22

23      [7] Plaintiff's Complaint contains legal conclusions that the September 2024 Notice was in
    violation of various provisions of Chapter 107, which are plainly contradicted by the public record.
24  See Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1141, n. 5 (9th Cir. 2003) (A court
    need not accept as true "legal conclusions merely because they are cast in the form of factual
25  allegations" . . . or allegations contradicted by documents on which the complaint "necessarily
    relies" . . .). For example, she alleges Deutsche Bank failed to properly substitute MTC Financial
26  as trustee, because it did not record an assignment of trustee pursuant to NRS 107.080(2). But on
    October 27, 2016, Bank of America, N.A., as attorney-in-fact for Deutsche Bank, recorded a
27  substitution of the original trustee, Ron Morrison, with MTC Financial Inc. dba Trustee Corps
    ("MTC") as the new trustee. ECF No. 9-19. Plaintiff's allegations that Deutsche Bank was not the
28  beneficiary of the DOT in 2016 are precluded by the Nevada court of appeals' holding that
    Deutsche Bank became the successor beneficiary to the DOT in 2010.

1    (2016). Its purpose is to "prevent harassment of debtors by creditors attempting double recovery

2    by seeking a full money judgment against the debtor and by seeking to recover the real property

3    securing the debt." Id. at 857-58 (quoting McDonald v. D.P. Alexander & Las Vegas Blvd. LLC,

4    123 P.3d 748, 751 (2005).

5         The Court finds this purpose is not implicated under the circumstances here, where

6    Deutsche Bank's State Court Action was for declaratory relief and did not seek a money judgment

7    against Plaintiff. An action for declaratory judgment seeks only a declaration of the rights of the

8    parties and cannot be construed "as an action for the recovery of any debt" or for the "enforcement

9    of any right" as provided in the statute. See Boca Park Martketplace Syndications Grp., 407 P.3d

10   at 764 ("When a plaintiff seeks solely declaratory relief, the weight of authority does not view him

11   as seeking to _enforce_ a claim against the defendant. Instead, he is seen as merely requesting a

12   judicial declaration as to the existence and nature of a relationship between himself and the

13   defendant.") (quoting Restatement (Second) of Judgments § 33 cmt. c.) (emphasis added). Further,

14   a nonjudicial foreclosure pursuant to NRS 107.080 is specifically exempted from the statutory

15   definition of "action." See NRS 40.430(6)(e) ("As used in this section, an "action" does not include

16   any act or proceeding . . . [f]or the exercise of a power of sale pursuant to NRS 107.080.").

17   Accordingly, Plaintiff fails to state a claim for wrongful foreclosure based on the theory that

18   Deutsche Bank's commencement of nonjudicial foreclosure proceedings violated the one action

19   rule because of the State Court Action.

20        **B.  Plaintiff's Third Complaint**

21        The Court now addresses Plaintiff's claims brought in her third lawsuit against Deutsche

22   Bank which was filed in June of 2025, Case No. 2:25-cv-01241-RFB-DJA and consolidated with

23   the instant matter.

24        The Court finds that Plaintiff's third complaint, which is over one hundred pages in length

25   and purports to contain over thirty causes of action, violates the pleading requirements of Federal

26   Rule of Civil Procedure 8. While this Court must liberally construe pleadings by _pro se_ litigants,

27   _pro se_ complaints must still, at a minimum, comply with the pleading requirements under Rule 8,

28   which instruct that a pleading must contain "a short and plains statement showing that the pleader

is entitled to relief," and that each allegation "must be simple, concise, and direct." See e.g., McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (concluding that a court may dismiss a pro se litigant's complaint for noncompliance with Rule 8 because "[p]rolix, confusing complaints. . . impose unfair burdens on litigants and judges.") Dismissal under Rule 8 is appropriate in "those instances in which the complaint is so 'verbose, confused and redundant that its true substance, if any, is well disguised.'" Hearns v. San Bernadino Police Dep't, 530 F.3d 1124, 1131 (9th Cir. 2007) (quoting Gillibeau v. City of Richmond, 417 F.2d 426, 431 (9th Cir. 2008)).

The Court finds Plaintiff's third complaint against Deutsche Bank violates Rule 8. The complaint is over 100 pages and purports to contain 38 causes of action, most of which are not cognizable. To the extent the complaint can be construed as bringing a cause of action for wrongful foreclosure or quiet title based on Plaintiff's claim that Deutsche Bank's lacks standing to foreclose, those causes of action are redundant and are precluded by the doctrines of judicial estoppel, issues preclusion, and the Rooker-Feldman doctrine, as discussed at length above. The remaining causes of action appear to depend on a finding that Deutsche Bank cannot legally foreclose and therefore its attempts to foreclose constitute abuse of process. But because Plaintiff's challenge to Deutsche Bank's right to foreclose is precluded, her causes of action that depend on a finding that Deutsche Bank had or has no right to foreclose cannot be sustained.

Plaintiff's third complaint also appears to raise a claim for violation of the discharge injunction which was issued in her Chapter 13 bankruptcy. That claim is separately dismissed without prejudice because there is no private right of action for violation of a bankruptcy discharge, and the exclusive means to enforce the discharge injunction under 11 U.S.C. § 524 is through contempt proceedings in bankruptcy court. See Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506-510 (9th Cir. 2002).

Any remaining causes of action not explicitly addressed herein are dismissed under Rule 8, without leave to amend, because in filing three separate repetitious complaints Plaintiff has effectively had multiple opportunities to amend, and the Court finds further amendment would be both futile and prejudicial to Deutsche Bank.[8] See e.g., Cafasso, U.S. ex rel. v. Gen. Dynamics C4

---

[8] The Court also notes Plaintiff's third complaint violates the doctrine of claim splitting,

1    Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (affirming dismissal of a *pro se* complaint without

2    leave to amend under Rule 8, because the lengthy and repetitious nature of the complaint

3    "prejudices the opposing party and may show bad faith" of the plaintiff.)

4        **C. *Lis Pendens***

5          The Court finds Plaintiff has not established that she is likely to prevail and, because the

6    Court grants Deutsche Bank's Motion to Dismiss without leave to amend, she has no chance of

7    success on the merits in this action. Accordingly, the Court will order the cancellation and

8    expungement of the *lis pendens* she recorded. See NRS 14.015(3)(a)-(b); (5).

9

10    **IV.    CONCLUSION**

11          For the foregoing reasons, **IT IS ORDERED** that Defendant's (ECF No. 7) Motion to

12    Dismiss is **GRANTED** as follows: Plaintiff's claim for quiet title is **DISMISSED with prejudice**

13    and Plaintiff's claim for wrongful foreclosure is **DISMISSED without leave to amend, but**

14    **without prejudice**. Plaintiff's claims asserting a violation of the bankruptcy discharge injunction

15    without prejudice to her pursuing contempt proceedings in the bankruptcy court. All other claims

16    are **DISMISSED without prejudice** under Rule 8, and without leave to amend.

17          **IT IS FURTHER ORDERED** that Defendant's (ECF No. 10) Motion to Expunge *Lis*

18    *Pendens* is **GRANTED**. The *lis pendens* recorded by Plaintiff with the Clark County Recorder as

19    instrument number 202412310001776 on December 31, 2024 is **CANCELLED**. Cancellation has

20    the same effect as an expungement of the original notice pursuant to NRS 14.015(5).

21          **IT IS FURTHER ORDERED** that Defendant shall submit a proposed order regarding

22    which is based on the doctrine of claim preclusion and prevents a plaintiff from maintaining "two
separate actions involving the same subject matter at the same time in the same court against the

23    same defendant." Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007)
overruled on other grounds by Taylor v. Sturgell, 553 U.S. 880, 904 (2008). However, Nevada

24    preclusion law applies in this case, and it does not appear the Nevada Supreme Court has explicitly
recognized the doctrine of claim splitting. See Semtex Int'l Inc. v. Lockheed Martin Corp., 531

25    U.S. 497, 508-09 (2001) (federal courts sitting in diversity must apply the preclusion law "that
would be applied by state courts in the State in which the federal diversity court sits."). 

26    Accordingly, the Court does not apply the doctrine of claim splitting here, but notes that the public
policies underlying that doctrine are certainly implicated by Plaintiff's serial filings against

27    Deutsche Bank. See Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321 (9th Cir. 1995)
(discussing the policies underlying the claim splitting doctrine including protecting the defendant

28    from being harassed by repetitive actions based on the same claim and judicial economy) (citation
omitted).

1    cancellation/expungement of the *Lis Pendens* for filing with the Clark County Recorder consistent

2    with this Order by **October 6, 2025**.

3            **IT IS FURTHER ORDERED** that all other pending (ECF Nos. 21, 23, 35, 36, 37, 38, 42)

4    Motions are **DENIED** as moot.

5            **IT IS FURTHER ORDERED** that the Clerk of Court is directed to enter this Order in

6    each of the consolidated member cases: Case No. 2:25-cv-00127-RFB-DJA, Case No. 2:25-cv-

7    01241-RFB-DJA.

8            The Clerk of Court is further directed to close this case and the consolidated member cases.

9

10           **DATED:** September 30, 2025.

11

12                                                                     _____

13                                                                     **RICHARD F. BOULWARE, II**
                                                                       **UNITED STATES DISTRICT JUDGE**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28